**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

DAVID W. RILEY,               )
                                 )
      Plaintiff,         )
                                 )
v.                             )      Case No. 11-04253-CV-C-NKL
                                 )
CHRISTOPHER HESSENFLOW, et al.,  )
                                 )
      Defendants.       )

**ORDER**

This is a civil rights action brought by Plaintiff David Riley against

Defendants Christopher Hessenflow, Christopher Kelley, Deonte Eanes (identified

also in the parties' submissions as "Eades" and "Eads"), and Jonathan Voss

(Officers of the Columbia Police Department, collectively "police officers");

Kenneth Burton, Chief of the Columbia Police Department ("CPD"); Bob

McDavid, Mayor of the City of Columbia; and the City of Columbia, Missouri.

Plaintiff brings Fourteenth Amendment substantive due process claims

against each Defendant police officer for excessive force, violation of the right to

bodily integrity, wrongful arrest, fabricating false evidence, conspiracy to fabricate

false evidence, and deprivation of the right to a fair and impartial trial (Counts I-

IV) and against Defendants Burton, McDavid, and the City (Counts V-VII).  He

also brings a Fourth Amendment claim for excessive force against the Defendant

police officers (Counts VIII-XI) and against Defendants Burton, McDavid, and the

City (Counts XII-XIV). Plaintiff further brings claims of assault and battery pursuant to 42 U.S.C. § 1983 against the Defendant police officers (Counts XV-XVIII). Finally, Plaintiff brings claims against Defendant Chief Burton, Mayor McDavid, and the City of Columbia for negligent retention, training, and supervision of Defendants Hessenflow, Kelley, Eanes, and Voss (Counts XIX-XXIV).

Defendants move for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Defendants agree that there are genuine issues of material fact that preclude summary judgment regarding Plaintiff's Fourth Amendment excessive force claims against Defendants Hessenflow, Kelley, Eanes, and Voss (Counts VIII-XI), but move for summary judgment on all other Counts.

The Court DENIES summary judgment on the Fourteenth Amendment fabrication of evidence claim against Defendant Hessenflow (Count I) and GRANTS summary judgment on all other claims except those alleging use of excessive force in violation of the Fourth Amendment brought against the Defendant police officers (Counts VIII-XI).

## I.    Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wells Fargo Fin. Leasing, Inc. v. LMF Fette, Inc.*, 382 F.3d 852, 855 (8th Cir. 2004) (quoting Fed.R.Civ.P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S.Ct. 2548 (1986).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party, giving the nonmoving party "the benefit of all reasonable inferences."  *Mirax Chem. Prod. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991).  Once the moving party has met its burden, "the party opposing summary judgment may not rest on the allegations in its pleadings; it 'must set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed.R.Civ.P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

## II.    Facts

The following facts are viewed in the light most favorable to Plaintiff, as required by law at the summary judgment stage.

On or about the night of September 28, 2009, Defendants Hessenflow and Kelley were conducting an "undercover alcohol compliance check" at the Ultra-Mart liquor store in Columbia, Missouri.  As part of this compliance check, an undercover minor, Conor Patrick ("Conor"), would enter the liquor store and attempt to purchase alcohol, while Defendant Hessenflow, dressed in plainclothes, would follow him into the store and observe the transaction.  Both Hessenflow and

Conor were wearing audio recording devices to capture the incident. Defendant

Kelley and another undercover minor remained in the police van in the parking lot,

about sixty feet away from the Ultra-Mart.

Conor entered the Ultra-Mart. As Defendant Hessenflow was following

him some distance behind, Plaintiff and an acquaintance, Desiree Kemp

("Desiree"), were exiting the store. Plaintiff, the owner and operator of a used car

business, had spent that evening with his co-workers drinking and watching sports.

He had consumed some alcohol, and had asked Desiree to drive him to the liquor

store to pick up more to drink. Plaintiff and Desiree were exiting the store when

the encounter in question occurred. Plaintiff states that as he was walking back to

the car, he accidentally kicked a bottle. He noticed Defendant Hessenflow staring

at him in a menacing way, and felt afraid. Plaintiff attests he said some words to

Defendant Hessenflow to the effect of, "You don't want to fuck with me. Keep

fucking walking." Defendant Hessenflow testified that he heard Plaintiff say,

"Gimme your fucking wallet." At this point, Hessenflow was closer to the Ultra-

Mart than Plaintiff was, and Desiree had already gotten into the driver's seat of the

car. Defendant Hessenflow states that Plaintiff moved toward him menacingly,

while Plaintiff states that Hessenflow moved toward him. Hessenflow pulled out

his gun, pointed it at Plaintiff, and commanded him to get on the ground.

Hessenflow did not immediately identify himself as a police officer. Plaintiff

believed he was being robbed. He knelt on the ground and continued to "mouth

off" at Hessenflow. Hessenflow then pulled out his badge and kicked Plaintiff in

the head and chest.  Plaintiff attempted to rise and was again kicked down by Hessenflow.  Plaintiff also states that Hessenflow threatened to shoot him.

Defendant Kelley, who was in the police van about sixty feet away, saw Hessenflow raise his gun.  He ran to the scene and drew his gun.  He demanded Desiree to get out of the car and lie on the pavement, then handcuffed her.  Kelley was also in plainclothes.  Kelley informed Desiree that they were police officers and held Desiree down with his foot while Hessenflow tried to force Plaintiff to the ground.

Defendants Voss and Eanes, both in uniform, then arrived at the scene. Defendant Voss tackled Plaintiff, who had again attempted to rise to his knees, and forced him back to the ground.  Defendant Eanes twisted Plaintiff's left arm behind his back to put it in handcuffs, breaking it in the process.  Plaintiff attests that one of the Defendant police officers then slammed his head into the pavement, while other police officers kicked, beat, and choked him.  Plaintiff states that at no time was he told he was under arrest.

Plaintiff states that while he was lying handcuffed on the ground, he heard Defendant Hessenflow describe the event to the other police officers, stating that Plaintiff had aggressively approached him and demanded his wallet, even after Hessenflow had identified himself as a police officer.  Plaintiff says he heard Hessenflow laughing and joking with the police officers about the incident and the beating.  He states he heard one officer suggest they collect the "early version" of the liquor store's surveillance video.

During the incident, the undercover minor Conor had retreated to the police van. Plaintiff states that when Hessenflow discovered that the recording device worn by Conor had been left on and had likely captured the incident, he appeared angry and irritated and demanded Conor turn it off.

Plaintiff was taken to the hospital, where he was treated for a broken bone in his left arm, facial lacerations, head and neck trauma, and chest pain. Plaintiff also states he suffered a concussion from the incident and has since experienced depression, mood swings, and other psychological and mental illnesses as a result of his head injuries.

The recording device had recorded at least part of the incident. After Plaintiff's arrest, Hessenflow reviewed portions of the recording, determined it had no evidentiary value to Plaintiff, and turned in the device to the office that handled the undercover alcohol compliance checks. Hessenflow did not give the recording to the evidence custodian. The recording was subsequently recorded over.

Plaintiff was charged with one count of attempted robbery and one count of resisting arrest. Plaintiff first pled not guilty, but subsequently withdrew his plea and entered a plea of guilty to the charge of resisting arrest. In exchange for this plea, the attempted robbery charge was dropped, as well as an unrelated pending case involving a DWI.

## III. Discussion

### A. Claims against the Police Officers

In his amended complaint, Plaintiff pleads substantive due process claims under § 1983 against all the police officers for excessive force, violation of bodily integrity, wrongful arrest, fabricating false evidence, conspiracy to fabricate false evidence, and deprivation of the right to a fair and impartial trial. He separately states claims for assault and battery against specific officers under § 1983, without indicating a federal statutory or constitutional provision on which the assault and battery claims are based.

For the following reasons, summary judgment is granted on Plaintiff's Fourteenth Amendment Due Process claims against the Defendant police officers, with the exception of Count I against Defendant Hessenflow for fabricating false evidence. The Court does not address Plaintiff's claims against the police officers for excessive force under the Fourth Amendment because Defendants concede that these claims are submissible.

### 1. *Excessive Force*

Plaintiff alleges that the Defendant police officers used excessive force against him in violation of the Fourteenth Amendment. The Fourteenth Amendment's guarantee of substantive due process prevents the government from engaging in "conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity" or "interferes with rights implicit in the concept of ordered liberty." *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (internal quotes omitted); *Flowers v. City of Minneapolis*, Minn., 478 F.3d 869, 873 (8th Cir. 2007); *Schmidt v. City of*

*Bella Villa*, 557 F.3d 564, 574 (8th Cir. 2009). However, where "a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S. Ct. 1708, 1715 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272, n. 7, 117 S.Ct. 1219, 1228, n. 7 (1997)). In other words, where Plaintiff's allegations can be addressed under the Fourth Amendment, those claims are not also cognizable as violations of substantive due process.

The Supreme Court has made clear that claims of excessive force by police officers against a free citizen "should be analyzed under the Fourth Amendment and its 'reasonableness' standard," rather than as substantive due process claims under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989). For this reason, the Court grants summary judgment on the claims of excessive force in violation of the Fourteenth Amendment against the Defendant police officers.

### 2. *Right to Bodily Integrity*

Plaintiff also alleges that Defendant police officers violated his right to bodily integrity in violation of the Fourteenth Amendment. The Supreme Court has recognized a substantive due process right to bodily integrity. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 2267 (1997). However, § 1983 cases against police officers alleging violations of bodily integrity have centered

8

on sexual assault or harassment, as these police actions cannot be addressed under the Fourth Amendment's prohibition on excessive use of force. *See, e.g.*, *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 796 (8th Cir. 1998); *Haberthur v. City of Raymore, Missouri*, 119 F.3d 720, 723 (8th Cir. 1997); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 725 (6th Cir. 1996); *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). Here, Plaintiff has alleged no violations of his physical person that cannot be addressed under the Fourth Amendment's prohibition on excessive force. Therefore, in accordance with the reasoning of *Graham v. Connor* discussed above, analysis under the substantive due process analysis of the Fourteenth Amendment is not appropriate. *See Graham*, 490 U.S. at 395, 109 S. Ct. at 1871. Because Plaintiff has failed to allege a violation of his physical person that cannot be addressed by the Fourth Amendment, the Court grants summary judgment on his claims of violation of bodily integrity under the Fourteenth Amendment.

### 3. *Wrongful Arrest*

Claims of wrongful arrest also fall under the purview of the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 274, 114 S. Ct. 807, 813 (1994); *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 2694 (1979); *Garcia-Torres v. Holder*, 660 F.3d 333, 337 (8th Cir. 2011), *cert. denied*, 133 S. Ct. 108 (2012); *Moran*, 296 F.3d at 646. Plaintiff, however, argues that rather than look at each claim individually, the totality or "confluence" of his claims

should be considered under a substantive due process analysis. But he offers no cases in support of this argument, and the Supreme Court has warned against expanding the contours of substantive due process, as the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 272, 114 S. Ct. at 812 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068 (1992)). As *Albright* made clear, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Id*. at 273, 813 (quoting *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871). It would be inconsistent with this reasoning of the Supreme Court to recognize a substantive due process claim by looking at the totality of claims raised by the Plaintiff. To do so would venture into even more "uncharted" territory, and even fewer guideposts for responsible decisionmaking would be available. Because Plaintiff's wrongful arrest claim is explicitly addressed by the search and seizure provision of the Fourth Amendment, summary judgment on Plaintiff's claims of wrongful arrest under the Fourteenth Amendment is granted.

### 4. *Fabrication of and Conspiracy to Fabricate False Evidence*

Plaintiff claims that Defendant police officers conspired to fabricate and did fabricate a false justification for his arrest. These claims are appropriately brought under the Fourteenth Amendment.

The Eighth Circuit has stated that "when a person is damaged by outrageous police misconduct but the resulting injury does not neatly fit within a specific constitutional remedy," a Fourteenth Amendment substantive due process claim under § 1983 may be cognizable. *Moran*, 296 F.3d at 646. The Eighth Circuit has held that a claim of fabrication of evidence falls under the Fourteenth Amendment. *See Winslow v. Smith*, 696 F.3d 716, 732 (8th Cir. 2012) (recognizing a claim that officers "manufactured false evidence" as falling under the Fourteenth Amendment); *Livers v. Schenk*, 700 F.3d 340 (8th Cir. 2012) (same); *Moran*, 296 F.3d at 648 (same). These cases have further found that the fabrication of evidence may be "conscience-shocking" sufficient to rise to the level of a Fourteenth Amendment violation. *Winslow*, 696 F.3d at 736; *Livers*, 700 F.3d at 351; *Moran*, 296 F.3d at 648. In *Moran*, for instance, the plaintiff presented evidence that police officials purposefully scapegoated him for police misconduct, including fabricating evidence, ignoring exonerating evidence, employing questionable procedures, inappropriately referencing plaintiff's race, and pressuring employees to find a culprit. *Id*. at 647-48. The Eighth Circuit concluded that based on this evidence, a reasonable jury could conclude that the defendants had "falsely formulate[d] a pretense of probable cause." *Id*. at 647. Here, Plaintiff has alleged that the Defendant police officers manufactured false evidence and conspired to manufacture false evidence to justify his arrest for robbery, clearly falling within the ambit of these cases. As such, Plaintiff has

appropriately brought his claims of fabrication of evidence and conspiracy to fabricate evidence under the Fourteenth Amendment.

Defendants argue that Plaintiff's claim is barred by the doctrine of *Heck v. Humphrey*, which holds that a § 1983 action may not be brought where a successful outcome would necessarily challenge the validity of a criminal conviction or sentence, unless the claimant can show that the conviction was subsequently reversed or vacated. *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S. Ct. 2364, 2372 (1994). However, contrary to Defendants' assertions, the Supreme Court has read "necessarily" very narrowly, recognizing that in some cases, although a favorable outcome may ultimately be used to challenge a conviction down the line, a claim is cognizable under § 1983 when its success would not necessarily affect the validity of the conviction immediately. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011) (stating that plaintiff's "[s]uccess in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction," and that "while test results might prove exculpatory, that outcome is hardly inevitable"); *see also Nelson v. Campbell*, 541 U.S. 637, 647, 124 S. Ct. 2117, 2124 (2004) (acknowledging that "an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not 'necessarily imply that the plaintiff's conviction was unlawful'").

Because the attempted robbery charge was eventually dropped, Plaintiff's claims that the Defendant police officers fabricated evidence and conspired to

fabricate evidence justifying his arrest do not affect the validity of his conviction for resisting arrest. The validity and legitimacy of his conviction would be unaffected by the outcome of Plaintiff's Fourteenth Amendment claims for fabrication of evidence and conspiracy to fabricate evidence. *See Moore v. Sims*, 200 F.3d 1170, 1171-72 (8th Cir. 2000) (permitting a claim of wrongful arrest to go forward because the lack of probable cause would not necessarily imply the invalidity of plaintiff's drug-possession conviction, but prohibiting his claim that the drug was planted because that would undermine the conviction). For this reason, the *Heck* doctrine does not bar Plaintiff's Fourteenth Amendment claims against the police officers of fabrication of evidence and conspiracy to fabricate evidence.[1]

### i.    Fabrication of Evidence

With regards to Defendant Hessenflow, there is clearly a dispute of fact about whether he intentionally manufactured evidence. Plaintiff alleges that he

---

[1] Defendants also argue that if the Court construes this claim as a Fourth Amendment lack of probable cause claim, it is barred by the reasoning of *Malady v. Crunk*, 902 F.2d 10, 11 (8th Cir. 1990). That case held that where a plaintiff has been convicted of or pled guilty to the crime for which he was arrested, he may not bring a §1983 claim for arrest without probable cause. *Malady*, 902 F.2d at 11. The Court has not addressed this as a Fourth Amendment claim, but even if it had, Plaintiff's claim is not barred by *Malady*. The Eighth Circuit has recognized that the rule in *Malady* does not apply where a plaintiff "did not plead guilty to, and was not convicted of, the offense for which he was arrested; rather, he pleaded guilty to a later charged offense." *Thurmond-Green v. Hodges*, 128 F. App'x 551, 552 (8th Cir. 2005) (unpublished opinion); *see also Collins v. Bruns*, 195 F. App'x 533, 535 (8th Cir. 2006) (unpublished opinion) (stating that a guilty plea is not a complete defense to a § 1983 action). In the instant case, Plaintiff pled guilty to the crime of resisting arrest; the charge of attempted robbery, for which he was arrested, was dropped. Therefore, Plaintiff's guilty plea is not for the crime that triggered his initial arrest, and the bar in *Malady* does not apply.

told Hessenflow, "Keep fucking walking."  Hessenflow said in his deposition that he heard Plaintiff say, "Gimme your fucking wallet."  A genuine issue of material fact therefore exists as to what Plaintiff said to Hessenflow and what Hessenflow heard.  If Plaintiff said what Hessenflow claims he did ("Gimme your fucking wallet"), no reasonable jury could find a fabrication of evidence.  However, if Plaintiff said what he claims he did ("Keep fucking walking"), a reasonable jury considering all the evidence – including evidence that Hessenflow appeared upset about the recording and intentionally did not turn over the recording to the evidence custodian after listening to it – could conclude that Hessenflow intentionally fabricated evidence in order to create a pretense of probable cause.

Nonetheless, Hessenflow has also raised the defense of qualified immunity. Under the doctrine of qualified immunity, officials are only liable under § 1983 if their conduct violates a federal constitutional or statutory right "that was clearly established at the time of the violation, such that reasonable officials in appellants' positions would have known that they were violating that right."  *Livers*, 700 F.3d at 350; *Behrens v. Pelletier*, 516 U.S. 299, 305, 116 S. Ct. 834, 838 (1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  An official is not entitled to qualified immunity if he had "fair warning" that his conduct violated the plaintiff's rights.  *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002).  The Eighth Circuit has held that the manufacture of false evidence is a clearly established violation of the Fourteenth Amendment right to substantive due process.  *Moran v. Clark*, 359 F.3d 1058, 1061 (8th Cir. 2004);

*Livers*, 700 F.3d at 354; *Winslow*, 696 F.3d at 738. Therefore, if Hessenflow fabricated false evidence as Plaintiff claims, he is not entitled to qualified immunity.

For these reasons, Defendants' Motion for Summary Judgment as it relates to the fabrication of evidence claim against Hessenflow is denied. However, Plaintiff has introduced no evidence that any of the other police officers apart from Hessenflow fabricated evidence. Therefore, summary judgment on Plaintiff's claim of fabrication of evidence against the other police officers is granted.

### ii.     Conspiracy to Fabricate Evidence

In order to articulate a § 1983 claim of a conspiracy, a plaintiff must show "(1) the existence of a civil conspiracy," including a meeting of the minds between two or more persons; "(2) that the purpose of the conspiracy was to deprive her either directly or indirectly of her civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right." *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999); *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008). To survive summary judgment, a plaintiff must "allege with particularity and specifically demonstrate material facts that the defendants reached an agreement." *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 582 (8th Cir. 2006) (quoting *Marti v. City of Maplewood*, 57 F.3d 680, 685 (8th Cir.1995)). While allegations may include circumstantial evidence, plaintiff must still provide some "specific material facts" suggesting such a

meeting of the minds. *Id.*; *see also Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001); *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005). Importantly, "[s]peculation and conjecture are not enough to prove a conspiracy exists." *Mettler*, 165 F.3d at 1206.

In his amended complaint, Plaintiff states that after he was finally subdued and handcuffed, he heard Defendant Hessenflow say that Plaintiff demanded Hessenflow's wallet and continued to act aggressively toward Hessenflow even after Hessenflow informed him that he was a police officer. But assuming that Hessenflow and the other officers did all the things alleged by Plaintiff, there is insufficient evidence as a matter of law to show that there was any conspiracy to fabricate evidence. At most, the evidence shows that Hessenflow misrepresented Plaintiff's actions and arrested Plaintiff without probable cause, facts sufficient to support an independent Fourteenth Amendment claim of fabrication of evidence against Hessenflow, but not a conspiracy claim against all the Defendant police officers. There is simply no evidence that any other police officers had a "meeting of the minds" with Hessenflow.

Just because Hessenflow gave misinformation to the other officers and they laughed about the incident does not create an inference that the other officers knew Hessenflow was lying, or that they had agreed to this in advance. Laughing about Hessenflow's statements and actions is unprofessional but is not evidence of a conspiracy. Because one officer suggested that the store surveillance video be

obtained does not logically lead to the conclusion that the officer was trying to get the video to destroy it. Indeed, there is no indication that the video was destroyed, undermining any inference that the officers' intent was to cover up the lack of evidence justifying arrest. The rest of the evidence alleged by the Plaintiff on this point is about what Hessenflow did individually, such as acting upset that the undercover minor's recording device had been left on and not turning the recording over to the evidence custodian. While this is relevant to Hessenflow's credibility and whether he fabricated evidence, it does not create an inference of a conspiracy. Therefore, summary judgment is granted on Plaintiff's Fourteenth Amendment claim of conspiracy to fabricate evidence against the Defendant police officers.

### 5. *Right to a Fair and Impartial Trial*

Plaintiff also alleges that the Defendant police officers deprived him of his right to a fair trial in violation of the Fourteenth Amendment. Defendants again raise *Heck v. Humphrey* to argue that this claim is barred. Unlike the claims of fabrication of evidence and conspiracy to fabricate evidence, discussed above, here the *Heck* doctrine does bar Plaintiff's claim.

Plaintiff argues that he was deprived of his right to a fair and impartial trial because the Defendant police officers destroyed evidence of the recording made by the undercover minor. He also states that he pled guilty to resisting arrest so that the attempted robbery charge and an unrelated DWI charge would be dropped; because he had no money to pay a lawyer; he wanted to spare his family the

burden of a court case; and because he was thinking like a "sick person." He further points to the fact that his judge at first denied his plea on the grounds that his lawyer was equivocal about whether the plea was in Plaintiff's best interest.

This is the type of claim that the *Heck* doctrine is meant to guard against. *Heck* holds that where success on a claim would necessarily undermine a currently existing state conviction, such a claim cannot be heard as a § 1983 action, but only as an habeas corpus petition pursuant to the federal habeas corpus statute, 28 U.S.C. § 2254. *Heck*, 512 U.S. at 487, 114 S. Ct. at 2372; *see also Wilson v. Lawrence County, Mo.*, 154 F.3d 757, 761 (8th Cir. 1998) ("The gist of *Heck* is that section 1983 is not an appropriate vehicle for attacking the validity of a state conviction."). Plaintiff's claim that he was denied the right to a fair and impartial trial is effectively a challenge to Plaintiff's conviction based on his plea of guilty to resisting arrest. Therefore, this claim is barred by *Heck*.

### 6. Assault and Battery

Plaintiff also alleges claims of assault and battery "pursuant to § 1983" (Counts XV-XVIII). However, as the Eighth Circuit has made clear, a state tort law claim "*by itself* is not punishable under § 1983 because it does not allege a constitutional injury." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993) (emphasis added). Rather, a tort claim "can form the basis of a § 1983 suit only if defendant's conduct also infringes on some provision of the Constitution or federal law." *Id.*; *see also Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993) (stating that "tortious conduct even when performed under

18

the color of law does not become a constitutional wrong"); *Kurtz*, 245 F.3d at 758;

*Kohl v. Casson*, 5 F.3d 1141, 1145 (8th Cir. 1993); *McNees v. Mountain Home, Ark.*, 993 F.2d 1359, 1361 (8th Cir. 1993). The Supreme Court has explained, "Violation of local law does not necessarily mean that federal rights have been invaded. The fact that a prisoner is assaulted, injured, or even murdered by state officials does not necessarily mean that he is deprived of any right protected or secured by the Constitution or laws of the United States." *Screws v. United States*, 325 U.S. 91, 108-09, 65 S. Ct. 1031, 1039 (1945) (plurality opinion) (discussing the criminal counterpart of § 1983); *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160 (1976) (repeating the reasoning in *Screws* for the proposition that the Fourteenth Amendment is not "a font of tort law"). Because Plaintiff has not alleged that the assault and battery violated any federal constitutional or statutory right that would create a claim under § 1983, summary judgment is granted on that claim.

For the above stated reasons, summary judgment is granted on Counts II-VII against the Defendant police officers. The Court denies summary judgment on Plaintiff's claim against Defendant Hessenflow for fabrication of evidence (Count I).

### B.    Municipal and Supervisory Liability

Plaintiff brings a claim against Defendants Police Chief Burton, Mayor McDavid, and the City of Columbia for maintaining a policy or custom of permitting Columbia police officers to violate the Constitution as the Defendant

police officers are alleged to have done (Counts V-VII and XII-XIV). He also claims that these Defendants are liable for the negligent training, supervision, and retention of the Defendant police officers (Counts XIX-XXIV).

### 1. *Policy or Custom of Constitutional Violations*

Claims against government actors in their official capacities are construed as claims against the government entity itself. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991). Plaintiff's claims against Defendants Burton and McDavid in their official capacities are therefore addressed as claims against the City of Columbia. A municipality may be liable under § 1983 when its official policies or customs either "subject[] a person to a deprivation of rights or cause[] a person to be subjected to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotes omitted); *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035 (1978). The Eighth Circuit has defined "policy" as "an official policy, a deliberate choice or a guiding principle or procedure made by an official with authority." *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 779 (8th Cir. 2001) (internal quotes omitted). A "custom" is defined as "a persistent, widespread pattern of unconstitutional conduct of which officials have notice and subsequently react with deliberate indifference or tacit authorization." *Id*. at 779 (internal quotes omitted); *see also Mettler*, 165 F.3d at 1205. The Eighth Circuit has cautioned that "[a] single incident normally does not suffice to prove the existence of a municipal custom." *Mettler*, 165 F.3d at 1205; *see also Bd. of County Com'rs of Bryan County, Okl.*, 520 U.S. at 412, 117 S. Ct.

at 1392 (expressing doubt that "proof of a single instance of inadequate screening could ever trigger municipal liability"). To establish a municipal liability, "the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992). The plaintiff must also show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989). In other words, the municipality's policy or custom must be the "moving force behind the constitutional violation." *Id*. at 398, 1205.

Plaintiff has offered no evidence of either an official policy or a widespread pattern or practice of constitutional violations at the CPD. Neither has he offered evidence that the city officials had knowledge of prior misconduct and were deliberately indifferent to or tacitly endorsed such misconduct. For these reasons, summary judgment on Plaintiff's claims of a custom or policy of constitutional violations is granted.

### 2. *Negligent Training*

Plaintiff also alleges a policy or custom of negligent training. A municipality may be liable for deficient policies regarding officer training where "(1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality'; and (3) an alleged deficiency in the city's hiring or training procedures actually caused

the plaintiff's injury." *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting *City of Canton*, 489 U.S. at 389, 109 S.Ct. at 1205).

Plaintiff relies on the following in support of this claim: Hessenflow's statement that he could not recall the specifics of his firearms training; the alleged lack of training involving the undercover minor alcohol compliance checks; and Hessenflow's destruction of relevant evidence.[2]

Regarding the first claim, Hessenflow received 480 hours of initial training at the Basic Law Enforcement Academy, as well as subsequent training over the course of his career, which included the use of firearms. Hessenflow testified that although he did not recall specific elements of his firearms training at CPD, he stated that he understood "what the appropriate situation or the facts would be to unholster a firearm and pointing it at somebody [sic]," and then proceeded to explain when such action would be appropriate. [Hessenflow Deposition, pp. 21-24]. Plaintiff has offered no evidence disputing this or contesting that this training policy was inadequate and likely to result in a violation of constitutional rights. Indeed, Plaintiff has presented no evidence of a widespread violation of constitutional rights in the CPD.

---

[2] Plaintiff also relies on a 2006 report commissioned by then-Police Chief Randy Boehm evaluating the organizational culture of the CPD. This study focused on the tension and disconnect between police leadership and the rest of the department, and recommended improving communication, clarity of direction, and coordination among department levels. It did not address police interaction with members of the public and has no relevance to Plaintiff's claims.

With regards to the lack of training to conduct undercover alcohol compliance checks, although Hessenflow stated in his deposition that he could not recall specific training about this procedure, he testified that the grant to perform the check had "pretty specific guidelines to follow." Defendant Kelley also testified in detail as to the protocols involved in the undercover operations. More importantly, however, the training for the undercover alcohol compliance check is irrelevant to Plaintiff's claim. Plaintiff does not allege that his injury resulted from the undercover alcohol compliance check; he alleges the Defendant police officers engaged in an excessive use of force. Thus, there is an insufficient causal nexus between the undercover operations and Plaintiff's alleged injury. *City of Canton*, 489 U.S. at 385, 109 S. Ct. at 1203.

Regarding Hessenflow's failure to turn in the recording device as evidence, Defendant Kelley stated in his deposition, "It would have surprised me that he [Hessenflow] didn't do it... I would think that he would have turned it in as evidence..." [Kelley Deposition, p. 72-74]. However, although this may be an instance of individual officer negligence or malfeasance, Plaintiff has not alleged the existence of a custom or policy of inadequate training with regards to the preservation of potentially relevant evidence, or other instances of evidence not being turned in. In determining municipal liability, the Court is "concerned with the [municipality's] training policy, not with how [the individual officer] absorbed the training." *Larkin v. St. Louis Hous. Auth. Dev. Corp.,* 355 F.3d 1114, 1117 (8th Cir. 2004). Plaintiff has offered no indication that the department's training

policy with regards to preserving potentially relevant evidence was inadequate. Plaintiff has similarly offered no evidence of a persistent or widespread custom of destroying potentially relevant evidence of which policymaking officials were on notice. For these reasons, summary judgment on his negligent training claim is granted.

### 3.    *Negligent Retention*

Regarding Plaintiff's negligent retention claims, there is no evidence that any of the Defendant police officers had previously engaged in unconstitutional conduct that would have put the municipality on notice that they would commit a federal civil rights violation. While several of the police officers had previously received reprimands or suspensions for minor violations,[3] Plaintiff has introduced no evidence of prior incidents of excessive force or any violations of the Constitution by the Defendant police officers. Plaintiff claims that his "Counsel is aware of multiple lawsuits in which the City of Columbia and its Police Department have had similar actions filed against them," and requests leave to supplement the record to include these claims. [Doc. #63]. However, Plaintiff will not be permitted to supplement the record at this late date. If additional discovery was necessary in order to rebut Defendants' Motion for Summary Judgment, Plaintiff had ample opportunity to follow the steps outlined in Federal Rule of Civil Procedure 56(d). *See Chambers v. Travelers Companies, Inc.*, 668

---

[3] Hessenflow was suspended for 24 hours in 2010 for driving too fast; Kelley was reprimanded for traffic accidents; Voss was suspended for 15 days in 2007 for being rude to an arrestee; and there is no evidence Eanes was ever disciplined.

F.3d 559, 568 (8th Cir. 2012). Plaintiff did not do so, nor has Plaintiff presented any evidence that any of the alleged lawsuits showed any Constitutional violations that would put the Defendants on notice of claims similar to those raised by Plaintiff.

For the above reasons, summary judgment on Counts VII and XIX-XXIV is granted.

### 3. *Supervisory Liability*

Plaintiff's claim that Police Chief Burton and Mayor McDavid are individually liable for the Constitutional violations allegedly committed by the Defendant police officers and his claim of negligent supervision can be construed as a claim of supervisory liability. Whereas a claim against a government actor in his official capacity is construed as a claim against the government itself, *Hafer*, 502 U.S. at 25, 112 S. Ct. at 361, a supervisor may be held individually liable under § 1983 if he "knowingly and directly participated" in a constitutional violation or if he failed to train or supervise the official who caused the violation. *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 808 (8th Cir. 1994); *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). Importantly, a § 1983 action "will not lie against police supervisory officers for failure to prevent police misconduct, absent a showing of direct responsibility for the improper action." *Harris v. Pirch*, 677 F.2d 681, 685 (8th Cir. 1982). Plaintiff does not contend that Burton or McDavid knowingly or directly participated in the constitutional violations he alleges. He has further offered no evidence to prove a

Case 2:11-cv-04253-NKL   Document 72   Filed 01/10/13   Page 25 of 26

failure to supervise.  As discussed above, Plaintiff has also offered no evidence

indicating a failure to train.  Therefore, summary judgment on the claims against

Burton and McDavid in their individual capacity is granted.

**III.    Conclusion**

For the reasons discussed above, Defendants' Motion for Partial Summary

Judgment [Doc. #54] is GRANTED in part and DENIED in part.  The Court

DENIES summary judgment on the claim of fabrication of evidence against

Defendant Hessenflow (Count I) and GRANTS summary judgment on Counts II-

VII and XII-XXIV.  In addition to Count I, the remaining Counts (Counts VIII-XI)

are those alleging use of excessive force in violation of the Fourth Amendment

brought against Defendants Hessenflow, Kelley, Eanes, and Voss, which were not

contested in this motion.



                                        s/ NANETTE K. LAUGHREY
                                        NANETTE K. LAUGHREY
                                        United States District Judge


Dated:  January 10, 2013
Jefferson City, Missouri